**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

FILED
S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 MAR 30   P 3: 20

CLERK'S OFFICE
AT GREENBELT
BY_____

| | | |
|---|---|---|
| EDDIE MURPHY, | * | |
| Plaintiff, | * | |
| v. | * | **Case No. GJH-16-0246** |
| LEROY CONRAD, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Eddie Murphy ("Plaintiff" or "Murphy") brings suit against various correctional

officers and medical staff at the North Branch Correctional Institution ("NBCI") for alleged

violations of his Eighth Amendment rights. ECF No. 1. Presently pending is a Motion to Dismiss

or, in the alternative, for Summary Judgment, ECF No. 10, filed on behalf of Defendants CO II[1]

Leroy Conrad, CO II Shawn Murray, CO II Dean W. Rounds, and CO II Kevan Whetstone,

(collectively, the "State Defendants").[2] Also pending is Plaintiff's Motion for Leave to File a

Surreply.[3] ECF No. 17, to which the State Defendants have filed a Motion to Strike, ECF No. 19.

After considering the pleadings and exhibits, the Court concludes a hearing is unnecessary. *See*

Loc. R. 105.6 (D. Md. 2016). For reasons to follow, Murphy's Motion for Leave to File a

Surreply is granted, and the State Defendants' Motion to Strike is denied. The State Defendants'

---

[1] Correctional officer is denoted as "CO," and "CO II" refers to a particular title/rank. *See* ECF No. 10-3 at 10, 32.
[2] Defendants Colin Ottey, M.D. and Jennifer Giles, R.N. have yet to accept service. Murphy's claims against them will be considered after service is obtained and they respond to the Complaint.
[3] Plaintiff titled his Motion: "Application for Leave to File a Response to Defendants' Reply to Plaintiff's Response to Defendant's [sic] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment." ECF No. 17 at 1. The Court will construe Plaintiff's Application as a Motion for Leave to File a Surreply.

Motion to Dismiss or, in the alternative, Motion for Summary Judgment, ECF No. 10, is granted.

## I. BACKGROUND

Plaintiff Eddie Murphy is incarcerated at NBCI in Cumberland, Maryland. In his Complaint, Murphy claims that his rights under the Eighth Amendment were violated on February 26, 2013, when the State Defendants, who are correctional officers at NBCI, pepper sprayed him while he was attempting to hang himself in his jail cell. ECF No. 1 at 2–3.[4] Murphy also faults the State Defendants for the lack of response he has received to his administrative remedy procedure ("ARP") requests concerning the incident. *Id.* at 4. He is seeking compensatory and punitive damages. *Id.* at 5.

Murphy filed his Complaint against Defendants Officer Leroy Conrad, Officer Shawn Murray, Officer Dean W. Rounds, and Officer Kevan Whetstone (the "State Defendants") and Dr. Colin Ottey and Jennifer Giles, R.N. (the "Medical Defendants") with this Court on January 27, 2016. ECF No. 1.[5] Defendants Conrad, Murray, Rounds, and Whetstone filed a Motion to Dismiss or, in the alternative, for Summary Judgment, ECF No. 10, on May 5, 2016. Murphy filed a Response in Opposition, ECF No. 12, and the State Defendants filed a Reply, ECF No. 14. Murphy has also filed a Proposed Surreply and two additional Supplements. ECF No. 17; ECF No. 20; ECF No. 22. Defendants move to strike Murphy's Proposed Surreply. ECF No. 19.

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[5] Murphy previously raised essentially the same claims as those presented here against the State Defendants in *Murphy v. Rounds*, WDQ 13-2480 (D. Md. March 24, 2014) ("*Murphy I*"). In *Murphy I*, Murphy also named Colin Ottey, M.D., and Jennifer Giles, R.N. as Defendants, claiming that they were deliberately indifferent to his serious medical need by failing to properly treat him for exposure to chemical agents. On March 21, 2014, Murphy filed a Motion to Withdraw the Complaint without prejudice, and the Court dismissed the case without prejudice three days later. ECF No. 30; ECF No. 31. In the instant matter, both Plaintiff and the State Defendants incorporate the exhibits and declarations filed in *Murphy I. See* ECF No. 1 ¶ 8; ECF No. 10-1 at 2.

### A. Murphy's Allegations

#### 1. Excessive Force

Murphy states that on February 26, 2013, he was placed on "staff alert" for allegedly assaulting Shannon Sweitzer, a correctional staff member. ECF No. 1 ¶ 1; ECF No. 12-2 ¶ 3. On that same day, Murphy told Officers Conrad, Whetstone, Murray, and Rounds that he was having suicidal thoughts, and requested to see his "psych" who was on duty. *Id.* ¶¶ 2–3; ECF No. 12-2 ¶ 5. Murphy was receiving mental health treatment because he allegedly suffers from depression and other mental health conditions. *Id.* Murphy claims his cries for help went unanswered by the officers who assumed it was a joke, and that they in fact encouraged him to hang himself. *Id.* ¶ 4; ECF No. 12-2 ¶ 3.[6] His suicidal thoughts became unbearable due to the yelling, banging, and smells of human excrement on the tier. ECF No. 1 ¶ 5; ECF No. 12-2 ¶ 6.

Murphy then made the decision to hang himself, and states that he does not remember Officer Conrad ordering him to remove the rope from around his neck before pepper spraying him. ECF No. 1 ¶ 8; ECF No. 12-2 ¶ 8. Murphy claims that when Officer Conrad arrived at his cell, Murphy was "hanging by [his] shirt from the vent motionless" and "unconscious and unable to obey [Conrad's order]." ECF No. 12-2 ¶ 7. Randy Golden, the inmate in the cell next to Murphy's cell, states that "[w]hen Officer Conrad came to cell 1-C-2 he screamed that inmate Murphy was hanging to the other officers. He then ordered Murphy to take the rope from around his neck once then opened the food slot and sprayed pepper spray a long burst [sic] into

---

[6] Murphy supports such allegations with a declaration from inmate Randy Golden, who states that "[o]n 02/26/2016 I was in cell 1-C-2 next to Plaintiff Eddie Murphy when he was complaining of being suicidal and requesting to talk to mental health staff through the cell door to Officer Rounds, Conrad, and Murray . . . but he was taunted to 'do it.'" ECF No. 20-1 at 1. "Murphy informed these officers again during lunch while, in front of his cell [sic] and was again told to 'do it.'" *Id.* Murphy also attaches a declaration from inmate John A. Wagner, who states, "I . . . aver that I've witnessed several instances where guards Conrad, Murray, and Rounds, Sr. have with virulence/ nefariousness told and encouraged sick prisoners to just kill themselves while using depreciatory/denigrating language. I testify that Eulistas Dunn and Courtney G. Campbell, and Derrick D. Dirtan all attempted suicide having sought psychological treatment with the aforementioned prison guards." ECF No. 21-2 at 2.

Murphy's cell." ECF No. 20-1 ¶ 4. Murphy claims the State Defendants failed to follow proper procedures before applying pepper spray because a sergeant and a mental health provider were not present before he was pepper sprayed. ECF No. 1 ¶¶ 10–11.

Murphy claims that when he regained consciousness, he began to feel slaps and punches to his face. ECF No. 12-2 ¶ 8. Inmate Golden also states that he "listened in the radiator on the wall in the back of the cell and could hear Officers [sic] and Conrad punching and slapping [Murphy] saying 'wake up nigger!'" ECF No. 20-1 ¶ 5. Murphy was then dragged away by the officers to the medical unit "for treatment." ECF No. 1 ¶ 13; ECF No. 12-2 ¶ 8; ECF No. 20-1 ¶ 6. Video footage captured from outside the cell shows two officers dragging Murphy's body, which appears to be limp, out of his cell and down a large hallway. ECF No. 14-1 at 10:20:10 A.M.[7]

Murphy was subsequently evaluated in the medical unit by Dr. Colin Ottey and Jennifer Giles, R.N. ECF No. 1 ¶¶ 14, 15. Murphy claims that he was initially denied a shower and water to wash the pepper spray out of his eyes. *Id.* Murphy points to Nurse Giles' note stating that "staff wiped as much as possible from [patient's] skin" as evidence that the amount of pepper spray was excessive. ECF No. 12-2 ¶ 10. Murphy states, "I felt as if I was in a pool of lava and I could barely breathe due to the fumes." ECF No. 12-2 ¶ 10. He continues that he was "in severe pain from the pepper spray as well as being slapped and punched by Officers Conrad and Rounds," and that "[t]his pain lasted over twenty four hours." *Id.* ¶ 11.

### 2. Exhaustion of Administrative Remedies

Murphy declares and maintains that he has tried to exhaust all administrative remedies regarding the February 26, 2013 incident. ECF No. 1 ¶ 16; ECF No. 12-2 ¶¶ 14–15. On March 8,

---

[7] State Defendants attach video footage as Reply Exhibit 1. ECF No. 14-1 at 3. Time stamps included here indicate the time noted on the video footage in the lower right hand corner of the frame.

2013, Murphy filed an administrative remedy procedure ("ARP") request. ECF No. 12-1 at 1;

*see also* ECF No. 10-4 at 5. Institutional Remedy Coordinator Jared Zais, who received the ARP

request, instructed Murphy to resubmit his request with "additional documentation that indicates

force is not to be used to save his life." *Id.* Murphy attests that he complied with these

instructions to resubmit his ARP request with the additional information. *Id.* He states that he left

the new ARP request in his cell door for collection, ECF No. 12-2 ¶ 14, and identifies

Defendants as the officers who take his ARP requests "as if they are going to sign and stamp

them." ECF No. 1 at 5. Murphy allegedly did not receive a "carbonless" copy of his request or a

response back. ECF No. 12-1 at 2. Murphy attests that he appealed to "Reisterstown" and to

"Sudbrook Lane," but received no reply from either office.[8] ECF No. 1 ¶ 16; ECF No. 12-1 at 2.

He also claims to have "refiled remedy requests four times" but "never received a yellow copy as

a receipt." ECF No. 1 at 4–5.

### B. State Defendants' Response

The State Defendants move to dismiss Plaintiff's Complaint for failure to exhaust

administrative remedies, or for summary judgment in their favor because there is no genuine

issue of material fact at issue. ECF No. 10 at 2–3. Their exhibits include declarations, the Use of

Force Report written after the incident, the Investigator's Summary, ARP records, copies of

Murphy's mental health records, and portions of the DPSCS Use of Force Manual. ECF Nos. 10-

3–10-11. The State Defendants have also included video footage from NBCI. ECF No. 14-1.[9]

---

[8] The Court takes judicial notice that the Department of Public Safety and Correctional Services (DPSCS) is located on Reisterstown Road in Baltimore, Maryland. The Inmate Grievance Office is located on Sudbrook Lane in Pikesville, Maryland. *Contact Information by Agency*, https://www.dpscs.state.md.us/contact_by_agency.shtml (last visited March 30, 2017).

[9] The State Defendants' video spans six minutes from 10:15:59 A.M. to 10:22:02 A.M on February 26, 2013. It contains one camera angle and no audio. The video appears to have been taken from a ceiling camera located on C-Tier in Housing Unit 1 at NBCI. The outside of what is presumed to be Murphy's cell, 1-C-3, can be seen on the first floor on the lower right-hand side of the screen, as are several other cells on both the first and second floors. The inside of Murphy's cell is not visible. Between 10:15:59 and 10:18:50, several guards are standing in an open

### 1. Exhaustion of Administrative Remedies

Following the incident, Murphy filed an Administrative Remedy Procedure ("ARP")

request on March 8, 2013, Case No. NBCI-0563-13, primarily complaining about the response to

his suicide attempt by correctional and medical staff. [10] ECF No. 10-4 at 5. In the ARP, Murphy

recounts the incident as it happened to him:

> On 2/26/2013 complainant Eddie Murphy was placed in a
> temporary cell 1-C-3 for alleged inmate rule violation 101, assault
> on Shannon Sweitzer, LPN. At the reported approximate time
> 10:19 a.m., L. Conrad, CO II was conducting a security round
> when he found complainant hanging from the vent, by his neck
> with a t-shirt, from about 9 feet. Conrad gave complainant several
> direct orders to remove the rope from around his neck to which
> complainant was nonresponsive due to his semiconscious state. [11]

ECF No. 10-4 at 5. Murphy was directed to resubmit the ARP request with additional

information. *Id.*; ECF 10-5 ¶ 3. He was instructed to "provide documentation that indicates that

force is not to be used to save a life." *Id.* The instructions then asked, "[w]as CPR necessary? If

so, who brought you back to life?" *Id.*; ECF No. 10-4 at 3. On March 13, 2013, Murphy

allegedly received the Warden's response advising him to resubmit with additional

documentation. ECF No. 10-4 at 6; ECF No. 10-5 ¶ 3. According to Defendants, Murphy did not

resubmit the ARP, and the claim was procedurally dismissed for failure to resubmit. ECF No.

---

doorway near the back of the tier. At 10:18:50, three guards are seen walking briskly toward the door of Murphy's
cell and then congregate around the door. They make several movements back and forth in front of the door. At
10:19:16, one guard appears to make a quick hand gesture towards the door. It is not clear whether the door is open
or closed. At 10:19:26, the three guards enter the cell. Two remain in the cell, while one guard backs out of the cell
and appears to cough. At 10:19:45, two additional officers approach the scene on the left. At 10:20:10, two guards
pull Murphy's limp body out of the cell. Murphy is not moving. At 10:20:29, the guards have dragged Murphy into
the middle of the hallway, and by 10:20:38, they have dragged him out of the tier. Nothing is seen after 10:20:49.
Upon careful review of the footage, the video does not "utterly discredit" Plaintiff's version of the facts, *see Scott v.
Harris*, 550 U.S. 372, 380–81 (2007), nor does it particularly support Defendants' version of the facts, given its
limited view. The Court will thus construe the facts presented to the extent they are not contradicted by the video.
[10] Defendants attach an Individual ARP Index Report generated for Eddie Murphy, which demonstrates that Murphy
has filed 61 ARP requests at NBCI between September 16, 2010 and April 19, 2016. ECF No. 10-4 at 4.
[11] Murphy's statement continues on the next page, but is not shown in the record for this case. ECF No. 10-4 at 5.
The full text of Murphy's Request for Administrative Remedy, NBCI-0563-13-13, can be found at ECF No. 1-1 at
13–16 in WDQ-13-cv-02480, as part of Murphy's original filing in *Murphy I*.

6

10-4 at 3; ECF No. 10-5 ¶ 3.

Defendants attest that Murphy did not appeal the dismissal of his ARP request to the Department of Public Safety and Correctional Services (DPSCS) Administrative Remedies Procedures/Inmate Grievance Program Unit (ARP/IGP Unit), as required by applicable institutional guidelines and state regulations. In support of this assertion, Defendants attach the declaration of Christina Ripps, a Correctional Case Management Specialist at the ARP/IGP Unit. ECF No. 10-6 ¶ 2. Ripps testifies that the "ARP/IG[P] Unit processes every appeal of an ARP filed by an inmate that is sent to DPSCS headquarters to the Commissioner of Correction and documents the receipt of the appeal." *Id.* She attests that since the February 26, 2013 incident, Murphy has filed only two appeals with her office, and they were unrelated to the incident. *Id.*

Defendants further declare that Murphy did not file an appeal with the Inmate Grievance Office ("IGO"), as required. Defendants attach the declaration of Russell A. Neverdon, Sr., Executive Director of the IGO. ECF No. 10-7. Neverdon testifies that he has "reviewed the records" and found that Murphy "has not filed any grievances referencing an assault and denial of medical treatment on 2/26/13." *Id.* ¶ 3. Finally, Defendants respond to Murphy's allegations that the correctional officers at NBCI stole ARP forms from his cell. In attached declarations, State Defendants Leroy Conrad, Shawn Murray, Dean Rounds, and Keven Whetstone testify to having "never discarded, destroyed or stolen any Administrative Remedies (ARPs) complaints belonging to inmate Eddie Murphy, #306-651." ECF No. 10-8 ¶ 3; ECF No. 10-9 ¶ 3; ECF No. 10-10 ¶ 3; ECF No. 10-11 ¶ 3.

### 2. Excessive Force

Correctional staff prepared a Use of Force ("UOF") Report after the February 26, 2013 incident. It reads in full:

7

On 2/26/13 Officer Leroy Conrad COII was preparing to conduct a security round on C-Tier in Housing Unit # 1. At approximately 10:19 AM, Officer Conrad was alerted to Temporary Housing Cell 1-C-3, which houses Inmate Eddie Murphy, #306651. As Officer Conrad arrived at the cell, he observed Inmate Murphy standing on his toilet with a make shift rope tied to the cell vent and wrapped around his neck. Officer Conrad gave Inmate Murphy several direct orders to remove the rope and come to the security slot and be handcuffed, to which Inmate Murphy did not respond. Officers Dean Rounds and Shawn Murray responded to assist. As Officer Conrad delivered a short burst of pepper spray into the cell, Inmate Murphy stepped off the toilet causing the rope to tighten around his neck. Officer Murray then called via Housing Unit Radio to have the cell door opened and for assistance. Officers Conrad and Rounds entered the cell, untied the rope from [Murphy's] neck and placed him in handcuffs. After confirming that Murphy was breathing on his own and had a pulse, Officers Kevan Whetstone and Rounds removed Inmate Murphy from the cell due to the overwhelming effect of the pepper spray to the Housing Unit # 1 Medical Room. After arriving at the Housing Unit #1 Medical Room, Dr. Colin Ottey evaluated Inmate Murphy and determined that Inmate Murphy would need transported [sic] to the Western Correctional Institution Infirmary for further evaluation and observation. Inmate Murphy was then escorted to the WCI infirmary without further incident. Photographs were taken by Sergeant Walter Iser.

ECF No. 10-3 at 29.[12] The Report determined that physical force was employed to thwart an

attempt at self-harm. *Id.*

DPSCS Lieutenant Dale Smith investigated the incident. ECF No. 10-3 at 33. On

February 26, 2013, Smith was unable to interview Murphy because he was "unresponsive." *Id.*

Two days later on February 28, 2013, Lieutenant Sean McKenzie attempted to interview

Murphy, but Murphy "refused to provide an oral or written statement." *Id.* Lt. Smith also

reviewed video footage capturing the incident. *Id.* at 33–34. Lt. Smith determined the level of

force used by correctional staff during the incident was appropriate and consistent with

---

[12] The UOF Report is unsigned.

applicable policies and the DPSCS Use of Force Manual. *Id.* at 34.[13]

Lieutenant Bradley Wilt states in his declaration that he perceives Murphy as a "manipulative inmate and an attention-seeker." ECF No. 10-3 at 24. Lt. Wilt states that Murphy attempts to create situations calculated to gain him single cell housing. *Id.* Bruce Liller, Mental Health Program Director at NBCI, attests in his declaration that Murphy does not suffer from psychosis or other serious mental illness, although he experiences periodic episodes of depression, often centering "on his displeasure with double celling." ECF No. 10-3 at 63–64; *see also* ECF No. 10-3 at 66–73. Liller states a certain level of depression is normal in prison. ECF No. 10-3 at 63. Liller claims that NBCI tries to match inmates with cell partners of their choice, or with cell mates most likely to be compatible. *Id.* at 64. Murphy, however, is very reluctant to share a cell and has allegedly exhibited manipulative behavior intended to secure single cell status. *Id.*

Lt. Wilt also disputes Murphy's characterization of the conditions on the tier as "inaccurate and exaggerated." ECF No. 10-3 at 25. Murphy's tier does not house severely mentally ill inmates. *Id.* Wilt acknowledges that although there are instances of behaviors consistent with what Murphy describes on the tier, just as there are on other tiers, such behaviors are sporadic and do not go unpunished. *Id.* Wilt states that Murphy's interpretation of NBCI responses to mental health concerns is inaccurate and inapplicable to the February 26, 2013 incident. *Id.* If an inmate informs a correctional officer that he is contemplating suicide, the inmate is placed in a temporary holding cell under observation until a psychologist can evaluate him and advise custody staff. *Id.*

Lt. Wilt claims Murphy's situation on February 26, 2013 "was different." ECF No. 10-3 at 25–26. The UOF Report demonstrates that the officers were involved in an apparent

---

[13] The Investigator's Report is unsigned.

emergency requiring immediate intervention, which included use of force with pepper spray. ECF No. 10-3 at 25. Wilt attests that "[t]he DPSCS Use of Force Manual authorizes employees to 'use force to control or stop non-compliant behavior in order to . . . protect self or others; . . . *prevent an inmate from self-inflicted harm*; . . . [and] require a non-compliant inmate to comply with a lawful order[.]'" *Id.* at 57 (emphasis added by Wilt) (citing DPSCS UOF Manual, IV.01.B (3), (4), (7)). Wilt states that the actions of the officers involved in the incident were consistent with the UOF Manual. *Id.* at 25. The officers were "trying to get Plaintiff to comply with the order to remove the rope and submit to cuffing." *Id.* According to Wilt, when the first officer arrived at the cell, Murphy was already in a position from which he could harm himself by jumping off the toilet. *Id.* at 25–26. Wilt claims that "[t]here was no time to call a psychologist," and that "[t]he officers made the decision demanded by the situation, and the end result was that Plaintiff sustained minimal harm." ECF No. 10-3 at 26.

## II.    STANDARD OF REVIEW

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF No. 10-1 at 1. A motion styled "in the alternative" implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County,* 788 F.Supp.2d 431, 436–37 (D. Md. 2011). If the Court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448–49 (4th Cir. 2011). However, to adequately raise the issue that discovery is needed, the non-movant typically must file an affidavit or declaration

10

pursuant to Rule 56(d) explaining why, "for specified reasons, [he] cannot present facts essential to justify [his] opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 244, 244–45. A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.,* 55 F.3d 943, 954 (4th Cir. 1995). Here, the Court considers evidence outside the pleadings from both parties, thus, it will convert Defendants' Motion into one for summary judgment. Further, although Plaintiff "request[s] that discovery be ordered," he has not specified why discovery is necessary, nor does it appear at this juncture that additional discovery would create a genuine issue of material fact.

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides, in part: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* Thus, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.,* 108 F.3d 529, 536 (4th Cir. 1997).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002).

Because Plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In *Anderson*, 477 U.S. at 249, the Supreme Court explained that when considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. The moving party bears the burden of showing that there is no genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Id.* Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial. *Id.*

## III.   DISCUSSION

### A. Exhaustion of Administrative Remedies

The State Defendants assert the affirmative defense that Murphy has failed to exhaust his claims through the administrative remedy process. The Prisoner Litigation Reform Act (PLRA)

provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Exhaustion is a mandatory requirement. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *Jones v. Bock*, 549 U.S. 199, 219 (2007). A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000)). The claims asserted must be dismissed if the defendant raises the affirmative defense, and also proves that the plaintiff has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216–17. At the same time, the exhaustion requirement is one of "proper exhaustion," such that administrative remedies must actually be "available" to the inmate. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (discussing that an administrative remedy is not considered available if the prisoner was prevented, through no fault of his own, from availing himself of it, or if required steps are no longer available). Indeed, "[w]hen prison officials prevent inmates from using the administrative process, the process that exists on paper becomes unavailable in reality." *Hill v. O'Brien*, 387 F. App'x 396, 400 (4th Cir. 2010) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)) (internal alterations omitted); *see also Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred in failing to consider inmate's claim that he was unable to submit a grievance because prison employees denied him the necessary forms).

In Maryland, filing a written grievance using an administrative remedy procedure form ("ARP request") is the first of three steps in the ARP process. *See* Md. Code Regs. 12.07.01.04(A). The prison warden typically reviews the inmate's ARP request and issues a

13

response. *See* 12.07.01.04(B). The Maryland Department of Public Safety and Correctional

Services ("DPSCS") has also provided for a "Preliminary Review" of ARP requests by an

Administrative Remedy Coordinator ("ARC"), an employee designated by the Warden "to

receive, acknowledge, and direct the investigation of complaints and to maintain all records

relating to the procedure." ECF No. 10-4 at 18, 43 (citing DCDs 185-001 IV.B; 185-003

VI.A.2).[14] The ARC is empowered to "dismiss[] a request for procedural reasons as insufficient

or incomplete and issue[] instructions for resubmitting the request." *Id.* at 45 (citing DCD 185-

003 F.1); *see also* ECF No. 10-4 at 48 (citing DCD 185-003 N.1).

If the ARP request is dismissed or denied through these initial steps, the inmate must file

an appeal with the Commissioner of Correction. *See* Md. Code Regs. 12.07.01.05(B); *see also*

ECF No. 10-4 at 27–28 (citing DCD 185-002 M). If that appeal is denied or the Commissioner

fails to respond to the grievance, the inmate must file a subsequent appeal with the Inmate

Grievance Office. *See* Md. Corr. Servs., Code § 10-206; Md. Code Regs. 12.07.01.04(B); *see*

*also* ECF No. 10-4 at 31 (citing DCD 185-002 M.14). Only after exhausting these administrative

channels is the inmate empowered to seek judicial review of his claims in a court of law. *See* Md.

Corr. Servs. § 10-210; 42. U.S.C. § 1997e(a).

In this case, both sides have provided testamentary evidence on the issue of whether

Murphy attempted to exhaust his remedies by filing supplemental material necessary to process

his ARP or by filing appeals with the Commissioner of DPSCS and Inmate Grievance Office.

Murphy claims he attempted to supplement his ARP as directed, and also to file grievances with

"Sudbrook Lane" and "Reisterstown." ECF No. 1 at 4; ECF No. 12-1 at 1–2. By contrast,

Defendants claim that Murphy did not resubmit his request and that neither DPSCS nor the IGO

---

[14] *See* ECF No. 10-4 at 11–67. Division of Correction Directives (DCDs) are "formal policy and procedures of a
general, long-term application relating to all aspects of correctional administration and operations." *Id.* at 16 (citing
DCD 1-2 VI.A.1).

has received appeals in his case. ECF No. 10-6; ECF No. 10-7.

Murphy responds and reiterates that he has attempted to submit the necessary forms, but that the correctional officers on his floor take the forms, "as if . . . to sign and stamp them," but that they do not return the forms to him. ECF No. 12-1 at 2; ECF No. 12-2 at 3; ECF No. 17-2 at 2. He further states that:

> When attempting to resubmit my ARPs for NBCI-0563-13, Defendants would steal my ARPs out of my door and not return them, nor [would they provide] a carbon copy. As a consequence, I was force[d] to appeal to the Commissioner but never received Part C of the appeal back notifying me that it was received and ultimately never heard any response. . .

ECF No. 17-2 at 2. In response, the State Defendants claim that they never discarded any of Murphy's complaints. *See* ECF No. 10-5; ECF No. 10-6; ECF No. 10-7; ECF No. 10-8; ECF No. 10-9; ECF No. 10-11.

As this Opinion addresses Defendants' Motion for Summary Judgment, the evidence is viewed in the light most favorable to Murphy. Upon careful review of all the submissions, the Court finds that there is a genuine dispute of material fact concerning whether the ARP process was fully available to Murphy. *See Oladokun v. Maryland*, No. CIV.A. DKC-14-463, 2014 WL 7014511, at *6 (D. Md. Dec. 10, 2014) (declining to grant summary judgment where there was a "factual dispute as to whether prison grievance system was fully available to Plaintiff); *Hill v. O'Brien*, 387 F. App'x 396, 400–01 (4th Cir. 2010) (finding district court erred by granting summary judgment for prison officials where there was genuine issue of material fact as to whether defendants hindered plaintiff's ability to exhaust administrative remedies); *Hill v. Haynes*, 380 F. App'x 268, 273–74 (4th Cir. 2010) (same). Indeed, Murphy has alleged that Defendants represented to him that they would sign and stamp his forms on multiple occasions, but that instead, they did not submit them and threw them away. *See O'Brien*, 387 F. App'x at

15

401 (noting that inmate alleged that he requested forms from his counselor but the counselor allegedly refused, destroyed the forms, or failed to respond to them after requiring plaintiff to wait before filing a new one). Thus, the Court will not dismiss Murphy's claims or grant summary judgment for lack of exhaustion.

However, Murphy clears only an "initial hurdle" by presenting a genuine dispute of material fact as to the issue of administrative exhaustion. *See Smith v. Maryland*, No. CIV.A. RDB-07-1135, 2009 WL 2878538, at *5 (D. Md. Aug. 26, 2009). Despite his assertion to the contrary, ECF No. 12-1 at 2, he is not entitled to have these facts resolved by a jury. *Id.*; *see also Small v. Camden Cty.*, 728 F.3d 265, 271 (3d Cir. 2013) (agreeing with Second, Fifth, Seventh, Ninth, and Eleventh Circuits that no right to jury trial exists on the issue of administrative exhaustion under PLRA). Murphy must still demonstrate "there are triable issues of fact on the asserted causes of action." *Smith*, 2009 WL 2878538, at *5. The Court will thus proceed to analyze the merits of Murphy's claims.

### B. Excessive Force by Prison Officials

An inmate's claim of excessive force "is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment." *Pevia v. Shearin*, No. CIV.A. ELH-13-2912, 2015 WL 629001, at *9 (D. Md. Feb. 10, 2015) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Whether force used by prison officials was "excessive" is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the

severity of the response. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986) (the "*Whitley*" factors). An absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

When reviewing a claim that the use of pepper spray or mace constituted excessive force, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment." *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996) (quoting *Slackan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). The use of pepper spray or tear gas in correctional facilities is "closely scrutinized" because such chemicals have "inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Id*.

While "it is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary for the sole purpose of infliction of pain,'" *Williams*, 77 F.3d at 763, "not every malevolent touch by a prison guard gives rise to a federal cause of action under the Eighth Amendment." *Pevia v. Shearin*, 2015 WL 629001, at \*9 (D. Md. Feb. 10, 2015) (citing *Wilkins,* 559 U.S. at 37) (internal alterations omitted). Pepper spray or mace is constitutionally permitted in small quantities to "control a recalcitrant inmate." *Williams*, 77 F.3d at 763 (quoting *Landman v. Peyton*, 370 F.2d 135, 138, n.2 (4th Cir. 1966)) (internal quotation marks omitted). Because "limited use" of pepper spray or mace "constitutes a relatively 'mild' response compared to other forms of force, the initial application of mace indicates a 'tempered' response by the prison officials." *Id.*

17

Courts have recognized "three general areas . . . [where the] use of pepper spray or other chemical agents may constitute excessive force in violation of the Eighth Amendment." *Pevia*, 2015 WL 629001, at *10. First, an Eighth Amendment violation has been recognized "when an officer used far more than a reasonable quantity of a chemical agent." *Id.*; *see, e.g., Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and another officer joined in). Second, a violation has been found where "a chemical agent was used without a prior verbal command." *See, e.g., Johnson v. Blaukat*, 453 F.3d 1108, 1111 (8th Cir. 2006) (finding Eighth Amendment violation where inmate was maced without warning, thrown to the floor, and choked by three officers). Third, courts have found an Eighth Amendment violation when officers pepper sprayed an inmate and then withheld medical treatment. *See, e.g., Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (inmate's cell sprayed with "super-soaker" used for riot situations and inmate then denied a shower and clean clothes for three days).

Upon careful review of all the facts presented here — including statements from Plaintiff, statements from fellow inmate Randy Golden, video footage from outside Murphy's cell, statements from the responding correctional officers, and Plaintiff's medical records from the day of the incident — none of these circumstances were present in Murphy's situation. While Murphy claims, in conclusory fashion, that "Officer Conrad deployed an excessive amount of pepper spray," ECF No. 12-2 ¶ 10, neither the video nor the declaration of Randy Golden support this assertion. The video shows three guards congregated around the door of Murphy's cell for no more than twenty seconds before rushing in to retrieve Murphy from his undisputed suicide attempt. Golden states that "[Officer Conrad] screamed that inmate Murphy was hanging . . . ordered Murphy to take the rope from around his neck once then opened the food slot and

18

sprayed pepper spray a long burst into Murphy's cell." ECF No. 20-1 ¶ 4. There is no evidence, for example, that Officer Conrad emptied a whole can of pepper spray, used a "super-soaker" or other large device meant for prison riots, or otherwise expelled an excessive amount of pepper spray into Murphy's cell. The medical records previously attached and cited to by Murphy also do not bear out that he was in any way injured by the pepper spray, although "he refused to open his eyes" and was "drowsy." *Murphy I*, WDQ-13-cv-02480, ECF No. 1-1 at 6 (noting that patient's skin that is observed appears to be within normal limits).[15]

Second, while Murphy attests that he "does not remember" Officer Conrad's directives, he does not contradict that which he included in his Complaint: "Officer Conrad stated that he gave plaintiff orders to take the rope from around his neck." ECF No. 1 ¶ 8. Inmate Golden's declaration also indicates that Conrad gave orders before spraying Murphy. ECF No. 20-1 ¶ 4. Murphy's claims that he was unconscious and already hanging when he was pepper sprayed, even accepted as true, do not cause the guards' actions to rise to the level of cruel and unusual punishment. Nothing in the evidence suggests that the spraying was done in a "malicious or sadistic way," even if the Court accepts Murphy's version that he was unconscious rather than merely nonresponsive. To the contrary, the record evinces an emergency situation in which the guards were attempting to thwart further self-harm by Murphy. Murphy himself acknowledges the applicable Mental Health Services Clinical Guidelines in his Supplement: "If an offender is

---

[15] As discussed in note 4 *supra*, the parties incorporate by way of reference the exhibits filed in *Murphy I*, and the Court takes judicial notice of these documents. "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Dailey v. Thomas*, No. CV ELH-16-3065, 2017 WL 1093277, at *1 (D. Md. Mar. 23, 2017) (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)). "Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are 'not subject to reasonable dispute,' in that they are '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Dailey*, 2017 WL 1093277, at *1. Of relevance here, a district court may "properly take judicial notice of its own records." *Id.* (citing *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990); *see also Dainty v. Wells Fargo Bank, N.A.*, No. CV TDC-16-2755, 2017 WL 750478, at *3 (D. Md. Feb. 24, 2017) (taking judicial notice of a Deed of Trust and docket entries in related foreclosure and bankruptcy actions); *Mua v. Maryland*, No. CV ELH-16-01435, 2017 WL 633392, at *7 (D. Md. Feb. 15, 2017) (taking judicial notice of "submissions in earlier court cases").

successful in causing severe harm to him/herself, the first responder to the scene shall take whatever steps the situation demands to protect the offender from further harm." ECF No. 22. While Murphy disagrees with the use of force in this situation, he does not dispute that first responders are instructed to take whatever steps necessary to protect the offender from further harm.

Third, although Murphy claims he was initially denied a shower for 30 minutes, it is also undisputed that the officers brought him directly to the medical unit after being sprayed, where he was examined by Dr. Ottey and a nurse wiped the pepper spray off of him. *Id.* ¶¶ 14–15;[16] *see Wheeler v. Fritz*, No. CIV.A. RBD-14-2727, 2015 WL 4485436, at *12 (D. Md. July 20, 2015) (granting summary judgment for Defendants where inmate was pepper sprayed but Defendants immediately brought inmate to medical staff for evaluation, and inmate had no resulting physical injuries). The medical staff also kept Murphy under close observation for several hours. *Id.*; ECF No. 1 ¶ 15. In sum, the facts here are readily distinguishable from circumstances in which courts have found an Eighth Amendment violation.

Moreover, the *Whitley* factors also counsel in favor of Defendants. By placing a rope around his neck that was tied to a vent and standing on a toilet, Murphy placed himself in immediate danger of harm. Murphy's refusal or inability to comply with Officer Conrad's multiple orders to remove the rope, ECF No. 10-4 at 5, further escalated the necessity for immediate action to prevent him from serious or mortal harm. The fact that Murphy stepped off the toilet while wearing the rope, ECF No. 10-3 at 29, corroborates that immediate action was warranted.[17] The UOF Report indicates the officers administered a brief burst of spray to thwart

---

[16] *See also* Medical Report from Dr. Colin Ottey and Nurse Notes from Jennifer Giles, R.N., attached to Plaintiff's Complaint in *Murphy I*, WDQ-13-2480 at ECF No. 1-1 at 6–10 (stating that at 12:00 p.m. "[patient] jumped up off the floor, felt his way over to the shower and proceeded to wash himself.")

[17] Murphy contends that he "was not standing on the toilet when Officer Conrad approached my cell, but was truly

Murphy's attempt to hang himself. ECF No. 10-3 at 29. Hence, there was a strong relationship between the need and amount of force applied.

Under the circumstances here, the State Defendants applied force, a brief burst of pepper spray, in a good-faith effort to prevent Murphy from inflicting immediate and serious self-harm, and then tempered the action by taking him for medical treatment once securing him in handcuffs. There is no evidence they acted with malicious or sadistic animus to cause harm, and in fact, they prevented Murphy from killing himself.[18] Further, Murphy fails to show the officers' actions violate DPSCS policy or procedure. Even when the facts are viewed in the light most favorable to Murphy, the Complaint fails to state an Eighth Amendment claim of excessive force. No genuine issues of material fact are in dispute, and the State Defendants are entitled to summary judgment in their favor as a matter of law. This matter shall proceed as to Colin Ottey, M.D. and Jennifer Giles, R.N., pending acceptance of service.

### C. Motion for Leave to File Surreply

Finally, the Court must address Murphy's Motion for Leave to File a Surreply. On June 10, 2016, Murphy filed his Proposed Surreply to Defendants' Reply, which included an affidavit by inmate John A Wagner. ECF No. 17; ECF No. 17-3. In their Motion to Strike, Defendants argue the exhibit is an unsigned[19] and "unverified" letter, and thus it fails to satisfy Fed. R. Civ.

---

hanging and unconscious." ECF No. 12-2 ¶ 12. However, Murphy does not dispute that he tried to hang himself; thus whether Murphy was still standing on the toilet or already hanging by the time the guards reached his cell is ultimately immaterial.

[18] Murphy's allegations that the guards encouraged him to hang himself, while objectionable and concerning to the Court, do not render the pepper spraying an Eighth Amendment violation. First, the record does not demonstrate that any such comments were made immediately prior to Murphy's suicide attempt — as the video clearly shows guards rushing over to Murphy's cell, rather than communicating with him for an extended period of time and taunting him. Second, even if the guards acted with subjective ill will by making such comments to Murphy, it does not follow that they acted with subjective ill will to thwart his later suicide attempt with physical force. Similarly, no reasonable juror could find that the guards slapping or hitting Murphy while he was unconscious was a malicious or sadistic action; rather, the only reasonable inference was that they were doing so in an effort to revive Murphy. *See* ECF No. 10-3 at 80, 93.

[19] Although the affidavit is handwritten, and the signature line bears John A. Wagner's printed name, it does not appear to bear an actual signature. ECF No. 17-3 at 2.

P. 56(c)(4), which requires that supporting affidavits be based on admissible evidence. ECF No. 19. Murphy responds in Opposition, testifying that Wagner's affidavit was in fact authentic and prepared by Wagner. ECF No. 21 at 3. Murphy attaches Wagner's declaration, affirming that Wagner prepared what he believed to be appropriate verification of his affidavit, and Murphy also re-attaches a new handwritten copy of Wagner's affidavit, which bears Wagner's signature. ECF No. 21-1 at 1; ECF No. 21-1 2.

As a threshold matter, "[g]enerally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Technologies Applications Service Company,* 80 F.3d 954, 962 (4th Cir. 1996). "Federal Rule of Civil Procedure 56(e) specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge." *Id.*; *see also Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991) (evidence submitted in opposition to summary judgment motion must be admissible and based on personal knowledge). The Court finds that Wagner's handwritten affidavit, ECF No. 17-3, is in substantially the same form as if the affiant were testifying in court. Mr. John A. Wagner's handwritten affidavit states, "I do solemnly affirm under the penalties of perjury pursuant to 28 U.S.C. § 1746, that the contents of the foregoing paper are true to the best of my knowledge, information, and belief." ECF No. 17-3 at 2. The information is also based on Wagner's personal knowledge as a "prisoner in the custody of the Commissioner of the Division of Correction (DOC), who has been housed at the North Branch Correctional Institutional (NBCI) since July 27, 2010" and "familiar with the allegations made by Mr. Murphy." *Id.* ¶ 1.[20] Thus, the affidavit is not inadmissible on the

---

[20] Contrary to Defendants' assertion that the affidavit is based on "hearsay," Wagner testifies to examples in which he has witnessed guards "taunting psyche prisoners." ECF No. 17-3 at 1; *see United States v. Guerrero-Damian,* 241 F. App'x 171, 173 (4th Cir. 2007) (noting that a statement is not hearsay if it is offered to show the effect on the listener).

evidentiary grounds Defendants suggest.

Second, as to Plaintiff's subsequent filings, Loc. R. 105.2(a) provides that "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed. Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (internal citations omitted). Neither side has briefed whether new arguments were raised in Defendants' Reply, or whether Murphy would have been able to obtain Wagner's affidavit before filing his Response in Opposition. Given Murphy's *pro se* status and the Court's overall disposition of the Motion, the Court will use its discretion to grant Plaintiff's Motion for Leave to File a Surreply, ECF No. 17, and deny Defendants' Motion to Strike, ECF No. 19. *See Aurel v. Wexford Health Sources, Inc.*, No. CV ELH-16-1293, 2016 WL 6095919, at *6 (D. Md. Oct. 18, 2016) (using discretion to deny prison medical officials' motion to strike inmate's second opposition and supporting affidavit).

Additionally, Murphy has also attempted to supplement his Complaint and Response in Opposition by filing another affidavit from inmate Randy Golden, ECF No. 20-1; portions of the Mental Health Clinical Guidelines, ECF No. 22; and a citation to a Maryland Division of Correction directive regarding use of chemical agents, ECF No. 26. The time for supplementing his pleadings has passed, and Murphy has not sought leave of Court or consent from opposing counsel before presenting these additional materials. However, again recognizing Murphy as a *pro se* litigant, the Court has also reviewed these materials and has included the information where relevant.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File a Surreply, ECF No. 17, is granted, and Defendants' Motion to Strike, ECF No. 19, is denied. The State Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, ECF No. 10, is granted. A separate Order follows.

Date: March 30, 2017

GEORGE J. HAZEL
United States District Judge